UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDDIE SAMPSON,

        Plaintiff,

       v.                 CASE NO. 8:14-cv-1434-T-MAP

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.
_____/

**ORDER**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks review of the Commissioner's decision denying his claim for supplemental security income (SSI) and disability insurance benefits (DIB). Plaintiff argues that the Administrative Law Judge (ALJ) erred by (1) failing to give proper weight to opinions from Plaintiff's treating physicians in determining Plaintiff's RFC, and (2) failing to properly evaluate Plaintiff's credibility. After considering the record, I find the ALJ followed the regulatory scheme and supported his decision with substantial evidence. Accordingly, I affirm the Commissioner's decision and dismiss Plaintiff's Complaint.

*A. Background*

Plaintiff filed for SSI and DIB on August 22, 2007, alleging his disability began March 22, 2007. Plaintiff has a GED and work experience as crane operator, truck driver, garbage truck driver, and floor coating installer. He alleged disability as a result of diabetes, vision problems, high blood pressure, gallbladder disease, hepatitis c, depression, impulse control, personality disorder, and arthritic knees. His claim was denied initially, upon reconsideration, and again in

a November 25, 2009, ALJ decision.  Plaintiff appealed and the Appeals Council remanded the case for a new hearing and decision.  In an April 20, 2012, ALJ decision, the ALJ found Plaintiff disabled since September 11, 2011, but not before.  Plaintiff appealed and the Appeals Council denied review.  Plaintiff then filed an appeal in this Court (doc. 1).

*B.  Standard of Review*

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a plaintiff is disabled.  20 C.F.R. §§ 404.1520; 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a); 416.920(a).  Under this process, the Secretary must determine, in sequence, the following:  whether the plaintiff is currently engaged in substantial gainful activity; whether the plaintiff has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the plaintiff can perform his past relevant work.  If the plaintiff cannot perform the tasks required of his prior work, step five of the evaluation requires the ALJ to decide if the plaintiff can do other work in the national economy in view of his age, education, and work experience.  A plaintiff is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987); 20 CFR §§ 404.1520(f), 416.920(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports them.  *Richardson v. Perales*, 402 U.S. 389 (1971).  The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept

2

as adequate to support a conclusion" exists.  *See* 42 U.S.C. § 405(g); *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064 (11th Cir. 1994).  A court may not reweigh the evidence nor substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F. 3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

### C.   Discussion

#### 1.   The ALJ's Consideration of Plaintiff's Treating Physicians' Opinions

Plaintiff argues that, in determining Plaintiff's RFC, the ALJ improperly weighed the medical evidence, particularly (i) Dr. Klein's April 26, 2011, impairment questionnaire (R. 798-803), (ii) Dr. Villamagna's May 28, 2011, multiple impairment questionnaire (R. 812-20), (iii) Dr. Koscho's September 11, 2009, medical assessment of ability to do work-related activities (physical) (R. 658-60), and (iv) Dr. Jackson's May 19, 2010, impairment questionnaire (R. 789-96).  As detailed below, Plaintiff argues that the ALJ failed to give good reasons for rejecting these records and, as a result, the ALJ improperly determined Plaintiff's RFC.  The Commissioner, however, argues that substantial evidence supports the ALJ's consideration of this evidence while evaluating RFC.

In determining at steps four and five whether a claimant can perform his past relevant work or other work, the ALJ must determine the claimant's RFC by considering all relevant medical and other evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1238–39 (11th Cir. 2004)*; see*

3

*also* 20 C.F.R. § 404.1520(e).  In assessing RFC, the ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)).  A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)  (citation omitted).

### i.  Dr. Klein

The ALJ gave "moderate weight" to Dr. Klein's April 26, 2011, impairment questionnaire (R. 996 (citing R. 798-803)).  Specifically, the ALJ explained that, while he agreed with Dr. Klein that Plaintiff was able to sit for 8 hours in a workday, he did not agree that Plaintiff is not able to stand or walk for more than one hour in a workday "because never once in his treatment notes before April 26, 2011, did Dr. Klein advise [Plaintiff] to limit his standing or walking" (R. 996).  Plaintiff argues that the ALJ's purported reason for discounting Dr. Klein's limitations on standing and walking is improper as doctors are not required – or even

4

expected – to record specific functional limitations in their treatment notes.

The medical records show that Plaintiff began seeing Dr. Klein, a podiatrist, in May 2010 (R. 838). Plaintiff complained about "burning, tingling, pulsations and aching pain" that had recently worsened (R. 838). At the initial appointment, Dr. Klein noted that Plaintiff had some decreased reflexes, as well as decreased vibratory sensation and proprioception, and diagnosed Plaintiff with neuropathy (R. 838-39). Dr. Klein also noted that Plaintiff had +5/5 muscle strength and that there was only minimal restriction in the range of motion in his ankles (R. 838). While the medications that Dr. Klein prescribed for the neuropathy initially seemed to work (R. 837), in July 2010, Plaintiff complained that the pain and throbbing in his feet was getting worse (R. 836). A few months later, Plaintiff again reported to Dr. Klein that the medication for his diabetic neuropathy was not working and the pain and throbbing in his feet was increasing (R. 835). And, Dr. Klein consistently noted that vibratory sensation and proprioception were decreased in Plaintiff's feet, but that his feet scored within normal limits on the Semmes-Weinstein 5.07/10g monofilament wire test (R. 824, 835, 836, 837)

Thus, Plaintiff's chief complaint concerning his feet at the time of Dr. Klein's impairment questionnaire was his neuropathy and the associated burning, tingling, pulsations and aching pain. Plaintiff testified at the hearing that his feet burn and pulsate "all the time" but "a lot when I sit a long time" (R. 32). In other words, the record reflects that Plaintiff's neuropathy is worse when he is sitting – not standing. And, as the ALJ pointed out, Dr. Klein never otherwise instructed Plaintiff to stay off of or elevate his feet. Accordingly, I find that there is substantial evidence supporting the ALJ's decision to give little weight to Dr. Klein's opinion

in the impairment questionnaire that Plaintiff is not able to stand or walk for more than one hour in a workday.

### ii. Dr. Villamagna

The ALJ also gave "little weight" to Dr. Villamagna's May 28, 2011, multiple impairment questionnaire (R. 996 (citing 812-20)).  The ALJ's reasons for going so were (1) the limitations that Dr. Villamagna indicated were inconsistent with his own treatment notes, which never indicated Plaintiff was limited in his ability to sit, stand, or walk; (2) Dr. Villamagna did not cite to medical evidence to support some of his limitations; and (3) Dr. Villamagna addressesd some areas beyond his specialty (R. 996-97).   Plaintiff retorts that doctors are not required – or even expected – to record specific functional limitations in their treatment notes, and that Dr. Villamagna's  multiple impairment questionnaire was consistent with his treatment notes.

Dr. Villamagna began seeing Plaintiff in 2009.  During his first encounters with Dr. Villamagna, Plaintiff regularly complained of knee pain (R. 733, 740).  During those visits, Dr. Villamagna noted that "pain was elicited by motion of the knee" or going from sitting to standing (R. 735, 740, 742) but also that the knee pain was at its worst in the morning and improved after normal movement (R. 740).  Dr. Villamagna prescribed mediation to relieve the pain (R. 744).  Thereafter, Plaintiff's knee pain appeared to be less severe.  From January 2010 until the May 2011 questionnaire, Plaintiff visited Dr. Villamagna approximately eight times, but only twice complained of knee pain (R. 866 (November 2010), 806 (May 2011)).  Moreover, Plaintiff's knee pain and difficulty walking in November 2010 was caused by "pins and needles" (R. 866)

6

and, therefore, was likely related to his neuropathy (for which he saw Dr. Klein).  And, when Plaintiff visited Dr. Villamagna in May 2011, he stated that he had moderate left knee joint pain only for the past 3 weeks (R. 806).

Dr. Villamagna also sometimes made notes concerning Plaintiff's mental impairments. In May 2010, Dr. Villamagna noted that Plaintiff had some difficulty sleeping (R. 878).  Later, Dr. Villamagna observed that Plaintiff suffered from other symptoms of depression but also that "activities of daily living are not difficult at all for the patient due to the depression symptoms" (R. 807, 862, 979).  On several occasions, Dr. Villamagna also opined that Plaintiff had "no behavioral complaints" (R. 862, 878).

On Dr. Villamagna's questionnaire, he stated that Plaintiff suffered from arthritis in his right knee (R. 813) and was in constant moderate pain (R. 814).  Dr. Villamagna stated that in an 8-hour workday Plaintiff can only sit for 3 hours, must get up every 15 minutes, and can only stand or walk for 2 hours (R. 814, 817).  Dr. Villamagna also noted that Plaintiff suffered from bipolar disorder and was not capable of tolerating more than low stress (R. 817).   As the ALJ pointed out, Dr. Villamagna's questionnaire answers are inconsistent with his treatment notes. Although it is undisputed that Plaintiff suffered from knee problems, Dr. Villamagna's records reflect that Plaintiff's knee pain was managed.  After December 2009, there is no record that Plaintiff complained he was in constant pain and his medications were not working.  Moreover, Dr. Villamagna lists Plaintiff's arthritis in his right knee as his sole source of pain, but during the month of the survey Plaintiff only complained to Dr. Villamagna about joint pain in his left knee.  Accordingly, I find that there was good cause for the ALJ to give little weight to Dr.

Villamagna's May 28, 2011, multiple impairment questionnaire.  Additionally, I find that substantial evidence supports the ALJ's determination that Plaintiff retained an RFC to do light work with limitations on climbing ramps and stairs and kneeling prior to September 11, 2011.

Finally, Dr. Villamagna's opinion in the questionnaire that Plaintiff's bipolar disorder affected his ability to work is inconsistent with Dr. Villamagna's opinions that Plaintiff had no behavioral complaints or difficulty carrying out daily activities.  Accordingly, I find substantial evidence supports the ALJ's reasoning to give little weight to Dr. Villamagna's May 28, 2011, multiple impairment questionnaire.

### iii.   Dr. Koscho

The ALJ also gave "little weight" to a September 11, 2009, medical assessment of ability to do work-related activities (physical) (R. 658-60) because (1) the ALJ could not discern the identity of the individual who signed the form, (2) the form was inconsistent with medical records, and (3) it contradicted the ALJ's observations of Plaintiff at the hearing (R. 997). Plaintiff argues that the ALJ's purported reasons for discounting the assessment are insufficient.

Reviewing the medical records and signatures reveals that Dr. Koscho filled out the assessment.  The assessment opines that Plaintiff has "psychological issues which prevent him from holding a job" and that Plaintiff's bilateral ossification of inferior patella prevents him from standing more than 2 hours in a workday, and for sitting for more than 3 hours (R. 658-60).

Dr. Koscho treated Plaintiff from 2006 to September 2009.  The medical records indicate that Dr. Koscho was primarily concerned with Plaintiff's diabetes and hypertension (*e.g.*, R. 542, 543, 546, 547, 548, 550, 555).  She also indicated in October 2007 he attended counseling for

8

his anger and depression issues (R. 543).  At that time, she suggested in a disability evaluation that his diabetes and depression would prevent him from working for three months (R. 700).  On September 11, 2009 - the same day Dr. Koscho filled out the assessment – Plaintiff complained about his knee pain and Dr. Koscho prescribed medication and instructed to come back for an orthopaedic referral if the condition did not improve (R. 746).

I agree with Plaintiff that it is not appropriate for an ALJ subjectively to arrive at an index of traits which he expects the claimant to manifest at the hearing, and then to deny the claim when such traits are not observed. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). The Eleventh Circuit has termed this "sit and squirm jurisprudence," and forbids that this method of analysis be used.  *See, e.g., McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988). However, an ALJ does not err by considering a claimant's demeanor during the hearing as long as the ALJ does not do this in lieu of consideration of the medical evidence presented. *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985); *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).  Here, the ALJ clearly considered medical records related to Plaintiff's mental impairments (R. 990-91, 995-96).  Accordingly, I find no error in the ALJ's discussion of his observations of Plaintiff at the hearing.

Additionally, I find substantial evidence supports the ALJ's reasoning to give little weight to Dr. Koscho's September 11, 2009, medical assessment because the assessment was inconsistent with concurrent records.  Those records show that Plaintiff's knee pain was not severe enough to affect his gait (e.g., R. 748), Plaintiff was self-reliant in his activities of daily living (e.g., R. 747, 750, 753), and that his irritability and depression were manageable with

medication (compare R. 636 with 764).

*iv.   Dr. Jackson*

Plaintiff argues that the ALJ erred in discounting Dr. Jackson's May 19, 2010, impairment questionnaire (R. 789-96).  Specifically, the ALJ found that Dr. Jackson's opinion contradicts his treatment records for a number of reasons, including that Dr. Jackson opined Plaintiff has a host of "marked" limitations when the treatment records suggest moderate limitations, and that Plaintiff appeared patient, calm, polite, and cooperative at the hearing.

Plaintiff began seeing Dr. Jackson in August 2009.  At his initial visit, Plaintiff reported depression, trouble sleeping, low energy, and irritability (R. 636).  Dr. Jackson prescribed Lamictal (R. 637).  Thereafter, Plaintiff reported that "things are going very well," that he was less irritable, and that the medication was "helping significantly" (R. 764; *see also* R. 770, 778, 929).  Of note, however, Plaintiff reported that – although he was showing restraint – he was frustrated and worried about lashing out at his stepson and stepdaughter (R. 778, 929).

For the reasons stated above, I find no error in the ALJ's discussion of his observations of Plaintiff at the hearing.  In addition, I find substantial evidence supports the ALJ's reasons for giving little weight to Dr. Jackson's May 19, 2010, impairment questionnaire because the questionnaire was inconsistent with Dr. Jackson's treatment records, which show Plaintiff's mental disorders were largely controlled by his medications.  Contrary to Dr. Jackson's opinions in the questionnaire for example, that Plaintiff was "markedly" limited in his ability to get along with peers and in his ability to interact appropriately, Plaintiff consistently reported that he was doing well on the Lamictal, which helped with his irritability (R. 764, 770, 778).  Finally, for

10

these same reasons, substantial evidence supports the ALJ's determination that Plaintiff retained an RFC to do light work with limitations on his social interaction and the difficulty of his work procedures prior to September 11, 2011.

### 2. The ALJ's Consideration of Plaintiff's Credibility

Plaintiff's last argument is that the ALJ improperly discredited his testimony (doc. 15 at 23). Plaintiff asserts specifically that the ALJ made insufficient findings to discredit Plaintiff's testimony concerning the severity of his knee pain and the severity of his mental impairments.

Credibility determinations are within the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). To aid ALJs in assessing credibility, the Eleventh Circuit has established a three-part "pain standard" that applies to claimants that attempt to establish a disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to his or her pain, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.

The ALJ properly considered Plaintiff's subjective complaints as required by the Eleventh Circuit. In discounting Plaintiff's complaints of disabling knee pain, the ALJ

11

considered Dr. Koscho's and Dr. Villamagna's medical records, as discussed above. While these doctors' questionnaires included several limitations, for the reasons discussed above, the ALJ properly discounted them. Moreover, the ALJ reviewed and considered the third-party function report that Plaintiff's girlfriend completed (R. 993). As the ALJ noted, Plaintiff's girlfriend reported that Plaintiff has no problem caring for himself other than needing assistance getting up out of the recliner (R. 324). She also reported that he takes care of his grandchildren and does chores all day and enjoys walking the dogs and playing with the grandchildren (R. 325, 327). All of these factors informed the ALJ's credibility determination, and they are all substantially supported by the record.

Concerning Plaintiff's mental impairments, Plaintiff testified at the hearing that he does not get along well with people and that he previously had anxiety attacks, but that Dr. Jackson and medications have helped him (R. 44-46). The ALJ accordingly determined that Plaintiff has mental impairments that affect his social functioning and included in his RFC limitations on his social interaction and the difficulty of his work procedures. To the extent that Plaintiff claims more severe social and mental limitations, the ALJ discounted these by noting, among other things, that Plaintiff was never hospitalized for his mental impairments, that Dr. Jackson's impairment questionnaire contradicted his medical records, and that Lamictal improved Plaintiff's impulse control (R. 990-91, 995-96, 998).[1] Accordingly, I find there is substantial

---

[1] I need not address Plaintiff's argument that the ALJ relied too heavily on Plaintiff's GAF scores, which showed only moderate limitations, because the ALJ's other reasons for discounting Plaintiff's credibility amount to substantial evidence.

evidence in the record to support the ALJ's clearly articulated credibility finding.

    *D.  Conclusion*

For the reasons stated, it is ORDERED:

  1.  The Commissioner's administrative decision is affirmed and the case is dismissed;

  2.  The clerk is directed to enter judgment for the Commissioner.

IT IS SO ORDERED at Tampa, Florida on December 9, 2015.


                                                        *Mark A. Pizzo*
                                                   MARK A. PIZZO
                                                   UNITED STATES MAGISTRATE JUDGE